WILLIAM LITTLE *vs.* DAVID RUBIN *et al, d.b.a.*

JUNE 5, 1939.

CAPOTOSTO, J.   This action of trespass on the case for negligence was tried before a justice of the superior court, sitting with a jury, and resulted in a verdict for the plaintiff in the sum of $3500.   The defendants thereafter filed a motion for a new trial, which was granted by the trial justice, unless the plaintiff remitted all of his verdict in excess of $2500, otherwise the motion was denied.   Such remittitur was filed by him.   The defendants then duly prosecuted a bill of exceptions to this court, setting forth exceptions to the denial of their motions for a directed verdict and for a new trial, and various exceptions to the charge of the court; to the refusal to give requested instructions and to rulings on the admission or exclusion of evidence.

The accident involved a collision between a taxicab operated by the plaintiff and a Chevrolet truck belonging to the defendants, which was being operated by their agent, John J. Nye.   The collision occurred at about 10:45 p.m., on March 25, 1936, in the intersection of Wayland and Lloyd avenues in the city of Providence.

These streets, both forty feet wide from curb to curb, cross each other at right angles, the former running about north and south, and the latter running about east and west. In the intersection there is a manhole cover, the center of which, according to the evidence, is fourteen feet north of the projected south curb line of Lloyd avenue. There is a second manhole cover just beyond this one nearer the center of the intersection. The weather conditions were good and, as far as appears in evidence, the street lights were on.

At the time of the accident the center of Wayland avenue was excavated for sewer purposes from University avenue, which is south of and runs parallel with Lloyd avenue, to the intersection in question. The excavation consisted of a trench, approximately five feet wide, with its westerly line about twenty-three feet from the west curb of Wayland avenue. This trench extended some sixteen feet into the intersection of Wayland and Lloyd avenues, or about two feet beyond the first manhole cover above described. Both sides of the trench were shored up with planking, extending six or seven feet above the street level, as far as the projected line of the south curb of Lloyd avenue. The sixteen feet of trench from this point to the manhole in the intersection were not so shored. Earth was piled up to a height of four or five feet along the east edge of this sixteen feet of trench. The west and north edges of this part of the trench were protected by a series of wooden horses. The east part of Wayland avenue was closed to traffic, while the west or left side of that highway was kept open for north-bound traffic only.

The plaintiff's taxicab was proceeding north on Wayland avenue and the defendant's truck was proceeding west on Lloyd avenue toward the intersection. The two vehicles collided a short distance west of the center of the intersection and just beyond the northerly end of the trench, the exact place of collision being somewhat in dis-

pute; and the right front corner and side of the taxicab and the left front side of the truck were in contact with each other.

It appears from the plaintiff's testimony that, in answering a call, he drove on the westerly or his left-hand side of Wayland avenue at about twenty miles an hour. When he came to within twenty-five feet or so of the southwest corner of the intersection he shifted into neutral gear, applied his brakes, and coasted at about eight miles an hour to that corner, opposite to which and to his right was the end of the shoring. At this point his view to the left was unobstructed and he saw no traffic approaching the intersection from that direction. The view to his right, however, was obstructed by the earth which was piled up along the right side of the trench; so he continued to coast until the front of his taxicab was a couple of feet past the end of the trench, where he again looked to his right and saw the defendants' truck, about thirty feet away and without lights, coming toward him. He then immediately jammed on his brakes and stopped the taxicab within three or four feet, with its front wheels at the second manhole cover, near the center of the intersection.

According to the plaintiff's testimony, he was stopped when the defendant's truck struck the taxicab. Immediately following the impact, the truck careened to its right, and, shooting off in a diagonal direction, jumped the curbing at the northwest corner of the intersection and came to a stop on the lawn of a church on that corner. The force of the collision threw the front of the taxicab in a westerly direction. It is unnecessary for the purposes of this case to refer to the injuries which the plaintiff claims to have sustained as a result of the accident.

From the testimony of the defendant's driver, John J. Nye, it appears that, driving at between twelve and fifteen miles an hour in the middle of his right-hand side of Lloyd avenue, he came to the intersection, and, seeing

no traffic coming from his right on Wayland avenue, he proceeded to cross the intersection. When he reached the east side of the trench, that is the side nearer to him, he looked to his left and could then see for a distance of twenty or twenty-five feet into Wayland avenue. At that time he saw no traffic approaching the intersection from that direction nor did he hear any warning from any such traffic. He then continued on at about the same rate of speed and at a distance of some seven or eight feet from the northerly end of the trench. When his truck was almost completely beyond the west side of the trench his attention was attracted by a "flash of lights on the highway" before him, and again looking to his left, he caught "a fleeting glance of a yellow automobile." He immediately swung to his right, but was hit "in the same time I saw him". According to his testimony the truck, properly lighted, was almost three-quarters of the way across the intersection, when the accident happened. He could not recall, however, whether or not he gave any signal of his approach in crossing the intersection.

Nye further testified that the force of the impact threw him against the left door of the truck, causing his head to strike the casing of the window on that side. Upon being asked by counsel for the defendants if he was perfectly conscious and knew what he was doing after he bumped his head, his answer was "No, I was not. . . . I don't remember just what occurred, only when I was forcing myself out through the door it was very difficult to get out." The door to which he referred was the left door of the truck. He placed the truck at this time with its front end on the church lawn and its rear end on the sidewalk at the northwest corner of the intersection. Nye further testified that shortly after the accident the plaintiff came over to where he was and asked him if he was hurt, and that his answer was "I got a pop on the head."

The plaintiff produced as a witness Sergeant John A.

Murphy of the Providence police, who testified that both the plaintiff and Nye pointed out a manhole cover in the center of the intersection as the place where the accident happened, and that he, in the presence of both men, then measured the distance from that manhole cover to the rear of the truck. This measurement showed sixty-one feet.

Two young ladies, who did not see the accident, testified for the defendants. Their testimony, which is substantially the same, is that, when they came out of the church and realized that there had been an accident, they walked over to where the plaintiff was standing beside the taxicab; and that, although he did not address them or any one else in particular, they heard him say: "The light was blinding my eyes", whereupon he reached inside the taxicab and unscrewed a light bulb from the dashboard that "was bigger than the ordinary bulb in a cab." In rebuttal the plaintiff denied this testimony.

At the request of the defendants the trial justice allowed two questions for special findings. The first question was whether the plaintiff made the statement attributed to him by the young ladies; and the second question was whether the plaintiff unscrewed the light bulb on the dashboard of the taxicab. The jury answered both of these questions in the negative.

The plaintiff's declaration is in four counts. The first count alleges excessive speed; the second count alleges neglect to keep a proper lookout; the third count alleges neglect to reduce the speed, and the fourth count alleges a failure to give proper and timely warning or signal. At the close of the testimony, the defendants moved for a directed verdict generally and also specifically as to each count. We have examined the defendants' exceptions in reference to these motions and find them without merit. The contentions urged by them on these points are, in substance, based upon the credibility of the witnesses or the sufficiency and weight of the evidence, all of which considerations are not before the trial justice on a motion for a directed verdict.

The defendants argue as if the testimony of their witnesses were undisputed or uncontradicted. However, they fail to recognize that, even if such were the case, the testimony that they rely upon is subject to the question of credibility and open to reasonable inferences adverse to their contentions. For instance, they urge that because there is no specific allegation in the plaintiff's declaration as to the absence of lights on the truck, the plaintiff's testimony that the truck had no lights should not receive any consideration on the question of the defendants' negligence. Again, they contend that as there is no direct testimony that no warning signal was given, therefore there was no evidence whatever that such was the fact. This disregards the testimony of the defendants' driver to the effect that he did not recall whether or not he gave a warning signal, and also the testimony of the plaintiff that he heard no signal.

Again, they say that because there is no direct testimony that the truck was traveling at an excessive speed before the accident it conclusively follows that the truck was then being operated at a proper speed, and that if it went diagonally across the intersection for a distance of some sixty-one feet to stop on the church lawn after the accident, such result must be attributed solely to the fact that the driver of the truck was so stunned by the blow on his head as not to know what he was doing. If these contentions were sustained, the plaintiff would be denied the benefit of conflicting testimony and of reasonable inferences that properly could be drawn in his favor from a consideration of all the evidence, which might reasonably lead to contrary conclusions.

The rule applicable to a defendant's motion for a directed verdict is well settled in this state. Such a motion must be denied if, on any reasonable view of the evidence, including inferences, the jury could find that the plaintiff is entitled to recover. We deem the citation of authority unnecessary. In the instant case the trial justice properly denied the

defendants' motion for a directed verdict generally and specifically as requested by them. Their exceptions on this point are overruled.

In line with one of their contentions on their motion for a directed verdict, the defendants requested the trial justice to charge the jury as follows: "I instruct you that there is no evidence whatsoever in the case sustaining the burden of proof that no signal was given by the defendants' driver." The request was refused and the defendants excepted. This exception must be overruled. The evidence, when read as a whole is reasonably open to the inference that, as a matter of fact, no warning signal was given by the defendants' driver. Furthermore, it was no concern of the trial justice at that time whether the plaintiff had sustained the burden of proof in this respect or in any other, for, had he done so, he would have clearly invaded the province of the jury.

The defendants excepted to that portion of the charge where the trial justice read to the jury certain provisions of the statute relating to the lighting of motor vehicles. P. L. 1928, chap. 1195, sec. 2 as amended by P. L. 1929, chap. 1329. They argue that, since there was no specific charge in the plaintiff's declaration that the truck was being driven without lights, the jury were entitled to infer from the reading of such provisions that "if they found the defendants did not have headlights burning the defendants could be held liable." The charge, read as a whole, is not subject to this criticism. The trial justice properly instructed the jury that whether or not the defendants had complied with the law concerning the lighting of automobiles was a circumstance which they might properly consider in connection with all the evidence on the question of the defendants' negligence, as alleged in the declaration. This exception is overruled.

The law applicable in the circumstances of this case was clearly stated to the jury by the trial justice in accordance with the recent opinions of this court in *Dembicer* v. *Paw-*

*tucket Cabinet & Builders Finish Co.*, 58 R. I. 451, and *Higginbotham* v. *Young*, 59 R. I. 1, where the principles of law to be applied in cases involving collisions at street intersections were fully discussed and, therefore, need not be repeated here. We find no error of law in the charge of the court.

The defendants also have an exception to the refusal of the trial justice to grant their motion for a new trial based on the usual grounds and on the further ground of excessive damages. There was strongly conflicting evidence on both the questions of the plaintiff's due care and of the defendants' negligence. It would serve no useful purpose to point out this conflict here, as we would only be repeating what is clearly apparent from the facts that we have above recited in considerable detail. In the argument before us the defendants placed great stress on the testimony of the two young ladies who testified for them, contending that their testimony was unimpeachable and showed that the real cause of the accident was the blinding of the plaintiff by the unusually large light on the dashboard of the taxicab.

It is to be noted, however, that the circumstances surrounding the making of the alleged statement of the disconnecting of a light bulb on the dashboard of the taxicab by the plaintiff, which were denied by him, made the accuracy of the recollection of the young ladies, if not their credibility, a matter for the jury's consideration. According to their testimony, which was almost identical, the plaintiff was talking to no one in particular when he made the statement. It may well be that the conclusion which the defendants draw could be inferred from the testimony of these witnesses, but this was a matter peculiarly within the province of the jury to determine in the first instance, and later to be passed upon by the trial justice in considering the defendants' motion for a new trial. Furthermore, it cannot be argued now that the jury overlooked this testimony when one considers that the testimony was brought directly to

their attention by the two requests for special findings which the defendants themselves submitted and which were granted by the trial justice and answered by the jury.

The defendants also strongly argue that no inferences unfavorable to them should be drawn from the course of the truck immediately after the collision, as Nye, the driver, was temporarily stunned by the blow on his head. There is no force in this argument, as it assumes that Nye was in fact temporarily stunned because he so testified. Whether he was stunned by the collision was for the jury to determine in connection with all the evidence in the case, and they might well find from the evidence before them that the loss of control of the truck by Nye was due to his previous conduct rather than to any physical condition resulting from the accident.

Moreover, the defendants cannot fairly say that the jury's attention was not directed to Nye's condition immediately following the collision, for we find the trial justice charging in their own language the defendants' ninth request to charge, as follows: "If you find and believe from all the evidence that Mr. Nye was so injured by the force of the collision that he was thereby temporarily stunned or knocked out so that he reasonably had no control of his car until after it stopped, I charge you that the failure to control the car after the collision to prevent it from going over the sidewalk and upon the lawn would not be a factor in determining liability."

The jury, on conflicting evidence, decided for the plaintiff and their verdict has been approved by the trial justice in a rescript which shows that he fairly considered the evidence on both the questions of liability and damages. In the exercise of his considered judgment, he sustained the jury's verdict on the question of liability, but reduced the amount of the damages from $3500 to $2500. Such a finding by the trial justice, who had the opportunity of seeing and hearing the witnesses will not be disturbed by us unless, upon our

examination of the evidence, we are of the opinion that his finding is clearly wrong. The sharply conflicting evidence in this case does not permit such an opinion. We therefore find that the decision of the trial justice denying the defendants' motion for a new trial if the plaintiff remitted all of the verdict in excess of $2500, which the plaintiff did, is without error.

All the other exceptions urged by the defendants have been considered and found to be without merit. Exceptions neither briefed nor argued are deemed to have been waived.

All of the defendants' exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict as reduced by the remittitur.

*McKiernan, McElroy & Going, Peter W. McKiernan, John C. Going, John S. McKiernan,* for plaintiff.

*William A. Gunning,* for defendant.